IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| JAMES M. PALMER,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>in her capacity as Acting Commissioner of the<br>Social Security Administration,<br><br>Defendant. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No. 2:12-cv-00606-EJF<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff James Palmer asks the Court[1] to reverse and remand the Social Security Administration's final agency decision denying his application for Disability Insurance Benefits ("DIB") and Supplement Social Income ("SSI") under Titles II and XVI of the Social Security Act. The Administrative Law Judge ("ALJ") determined that Mr. Palmer did not qualify for benefits because he "has not been under a disability, as defined in the Social Security Act, from March 31, 2010, through the date of this decision." (Transcript 27, ECF No. 21-3, the certified copy of the transcript of the entire record of the administrative proceedings relating to Mr. Palmer (hereafter "Tr. __").) Having carefully considered the parties' memoranda and the complete record in this matter,[2] the Court REMANDS to the Commissioner to evaluate and consider Mr. Palmer's mental health provider's opinion and the Utah Medical Board's Decision in accordance with Social Security regulations.

---

[1] In accordance with 28 U.S.C. §§ 636(c)(1) and (3) and Federal Rule of Civil Procedure 73, the parties have consented to proceed before the undersigned United States Magistrate Judge. (ECF No. 15.)
[2] Pursuant to Civil Rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the Court elects to determine the Motion on the basis of written Memoranda and finds oral argument unnecessary. *See* DUCivR 7-1(f).

**FACTUAL AND PROCEDURAL HISTORY**

Mr. Palmer, born February 28, 1971 (tr. 230), alleges he has disabling depression. (Pl.'s Opening Br. 1, ECF No. 11.) He also alleges difficulty with anxiety, concentration, suicidal ideation, and fatigue. (*Id.* at 2-6.) On April 20, 2011, Mr. Palmer protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning March 31, 2010. (Tr. 11.) On October 25, 2011, he filed a Title XVI application for social security income alleging the same onset date. (*Id.*) The Social Security Administration initially denied his claims on August 24, 2011 and, again, upon reconsideration on October 6, 2011. (*Id.*) Mr. Palmer then made a written request for hearing on October 18, 2011. (*Id.*) He appeared and testified at a hearing held by the ALJ on February 15, 2012 in Salt Lake City. (*Id.*)

Mr. Palmer has both depression and anxiety, which he claims have prevented him from working. (Tr. 50, 96, 167.) Mr. Palmer testified that he lives with his parents and receives food stamps as well as Medicaid. (Tr. 36.) Mr. Palmer's last employment ended March 31, 2010, because it was a temporary position at the Boy Scout Office. (Tr. 37.) Prior to that, he had worked at Ebay but lost his job. (*Id.*)

Mr. Palmer testified that he had difficulties with his job at the Boy Scout Office due to "mood swings" and "anxiety being there," which led to his missing at least one day of work per week. (Tr. 50.) Those days he missed work, he would do "[a]s little as possible" and "be in [his] room mostly reading or watching a movie," allowing him to relieve the stress of the week. (Tr. 51.) Mr. Palmer became stressed at work from being around others and correcting their mistakes. (*Id.*)

Asked to describe his life currently, Mr. Palmer testified he stays in the house most of the time. (*Id.*) In his room, he reads, takes naps, and watches videos. (Tr. 52.) With the help of his

medications, he can browse the internet at times. (*Id.*) Driving causes Mr. Palmer stress, as does attending church or a movie with his parents. (*Id.*) Mr. Palmer has a driver's license and does drive, though he finds it stressful, sometimes worrying someone has followed him. (Tr. 52-53.) Mr. Palmer testified he does house cleaning, dishes, occasional cooking, and grocery shops with his mother once every two weeks—but rarely by himself because it causes him anxiety. (Tr. 53-54.)

Mr. Palmer testified that he could not live alone at this time because he has suicidal tendencies and depression. (Tr. 54-55.) He described a past hospitalization for overdose at a time when he had financial stress, about 14 years ago. (*Id.*) Mr. Palmer said concern for the impact on his mother keeps him from committing suicide. (Tr. 56.)

To help address his mental health issues, Mr. Palmer originally saw Dr. Singhal, M.D., psychiatrist, at Comprehensive Psychological Services for slightly over two years. (Tr. 63, 295, 340-356.) In February 2011, when Dr. Singhal left the practice, Dr. Currier, M.D., psychiatrist, took her place, and started seeing Mr. Palmer. (*Id.*, tr. 279.) Mr. Palmer saw Dr. Currier again on April 20, 2011 (tr. 278), and again on August 1, 2011 (tr. 282, 324, 334). Mr. Palmer testified at the time of the hearing that he started seeing Dr. Currier once a month for three months just prior, and before that he saw him only once every four months due to financial constraints. (Tr. 56*.*)

## STANDARD OF REVIEW

42 U.S.C. §§ 405(g) and 1383(c)(3) provide for judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA"). The Court reviews the Commissioner's decision to determine whether the record as a whole contains substantial evidence in support of the Commissioner's factual findings and whether the SSA applied the

correct legal standards. 42 U.S.C. §405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Commissioner's findings shall stand if supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3).

Adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence, and "[e]vidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).[3] The standard "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. "Evidence is not substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (internal quotations marks and citations omitted). Moreover, "[a] finding of 'no substantial evidence' will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (internal quotation marks and citations omitted).

Although the reviewing court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks and citations omitted). The court will "review only the *sufficiency* of the evidence." *Oldham v. Astrue,* 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). The court does not have to accept the Commissioner's findings mechanically, but "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision and, on that basis, determine if the substantiality of the

---

[3] Courts apply the same analysis in determining disability under Title II and Title XVI. *See House v. Astrue*, 500 F.3d 741, 742 n.2 (8th Cir. 2007).

evidence test has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (internal quotation marks and citation omitted). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence,'" and the court may not "displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Lax*, 489 F.3d at 1084 (*quoting Zoltanksi v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

In addition to a lack of substantial evidence, the Court may reverse where the Commission uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thomson v. Sullivan*; 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## FIVE-STEP DISABILITY DETERMINATION

The Social Security Act ("Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Moreover, the Act considers an individual disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

5

In determining whether a claimant qualifies as disabled within the meaning of the Act, the SSA employs a five-part sequential evaluation. *See* 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-53 (10th Cir. 1988); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The analysis evaluates whether:

(1) The claimant presently engages in substantial gainful activity;
(2) The claimant has a medically severe physical or mental impairment or impairments;
(3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;
(4) The impairment prevents the claimant from performing his or her past work; and
(5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520, 416.920. The claimant has the initial burden of establishing the disability in the first four steps. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other work existing in the national economy. *Id.*

## ANALYSIS

In this case, the ALJ applied the five-step sequential disability evaluation and made the following findings of fact and conclusions of law with respect to Mr. Palmer:

1. Mr. Palmer "meets the insured status requirements of the Social Security Act through June 30, 2015." (Tr. 13.)
2. He "has not engaged in substantial gainful activity since March 31, 2010, the alleged onset date." (*Id.*)
3. Mr. Palmer "has the following severe impairments: depression and anxiety disorder and morbid obesity." However, his "condition of thrombocytopenia purpura is not a severe impairment, as it poses no significant functional limitations for a continuous 12-month period." (Tr. 14.)
4. Mr. Palmer "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*)
5. He "has the residual functional capacity to perform a range of light and sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he could lift and/or carry 20 pounds occasionally and 10 pounds

frequently, sit a total of 6 hours and stand/walk a combined total of 2 hours in an 8-hour workday. The claimant also has mental limitations as follows: In the area of understanding, carrying out and remembering instructions, he is not significantly limited. In his ability to use judgment in making work-related decisions, due to decreased attention and concentration, he would be limited to those decisions found in simple, routine work. In his ability to respond appropriately to supervision, co-workers and work situations, he can have only 'occasional' job-related contact with the general public, co-workers and supervisors. Lastly, in his ability to deal with changes in a routine work setting, he requires a stable work environment with few changes in his work routine." (Tr. 16.)
6. Mr. Palmer "is unable to perform any past relevant work." (Tr. 25.)
7. He "was born on February 28, 1971 and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date." (*Id.*)
8. Mr. Palmer "has at least a high school education and is able to communicate in English." (*Id.*)
9. "Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Mr. Palmer] is 'not disabled,' whether or not [he] has transferable job skills." (Tr. 25-26.)
10. "Considering [Mr. Palmer's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Mr. Palmer] can perform." (Tr. 26.)
11. Mr. Palmer "has not been under a disability, as defined in the Social Security Act, from March 31, 2010 through the date of this decision." (Tr. 27.)

In short, the ALJ found that Mr. Palmer had severe impairments of depression and anxiety disorder and morbid obesity, he could not perform past relevant work, but he did not qualify as disabled. (Tr. 14-25.) As a result, the ALJ denied Mr. Palmer's application for benefits. Mr. Palmer challenges the ALJ's determination on the following grounds: the ALJ accorded insufficient weight to the treating physician's opinions; the ALJ erred in not considering that State of Utah Medical Review Board Decision; the ALJ erred in not finding Mr. Palmer fully credible; the ALJ failed to address whether Mr. Palmer could sustain employment; and substantial evidence does not support the ALJ's decision at Step Five. Because the Court

7

finds a basis for remand in the ALJ's evaluation of the medical opinions, it declines to discuss most of Mr. Palmer's other objections.

## I. Evaluation of Treating Physician Medical Evidence

Mr. Palmer argues that the ALJ should have given Dr. Currier's opinion controlling weight or, in the alternative, great weight. (Pl.'s Opening Br. 9-12, ECF No. 11.) The Commissioner responds that the ALJ considered the record as a whole and appropriately afforded little weight to Dr. Currier's opinions. (Def.'s Resp. 9, ECF No. 18.) The ALJ's decision failed to attribute *a* weight to Dr. Currier's opinion. (Tr. 24-25.) The Court remands for the ALJ to perform the required analysis of both whether Dr. Currier qualifies as a treating physician and what weight to accord his opinion, whether treating physician or not.

An ALJ must evaluate every medical opinion. 20 C.F.R. § 404.1527(c); 42 U.S.C § 1383(c)(3).

> A physician's opinion is deemed entitled to special weight as that of a "treating source" when he has seen the claimant "a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment," taking into consideration "the treatment the source has provided" and "the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories."

*Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003) (quoting 20 C.F.R. § 416.927(d)(2)(i), (ii)). An ALJ may accord a treating physician's opinion controlling weight if the ALJ finds it "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). However, "[a] physician's opinion is . . . not entitled to controlling weight on the basis of a fleeting relationship, or merely because the claimant designates the physician as her treating source." *Doyal*, 331 F.3d at 763. When the ALJ does not give a treating physician's

8

opinion controlling weight, the ALJ must consider certain factors and explain his decision. 20 C.F.R. § 404.1527(c) provides these factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*See Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003) (citation omitted). To reject a medical opinion, treating physician or otherwise, the ALJ must provide "specific, legitimate reasons" for doing so. *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (quoting *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996)); *see Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (explaining "weight" analysis required for all medical opinions). The ALJ's opinion in this case did not provide sufficient analysis and did not state a position as to the weight he accorded Dr. Currier's opinion.

The ALJ's decision need not *discuss explicitly* all of the factors for each of the medical opinions. *See Oldham,* 509 F.3d at 1258 (stating that a lack of discussion of each factor does not prevent the court from according the decision meaningful review). However, when considering medical opinion evidence, the ALJ must weigh and resolve evidentiary conflicts and inconsistencies. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) (reflecting the ALJ's duty to resolve conflicting medical evidence). In addition, an ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011)(emphasizing the importance of an ALJ making findings sufficiently specific per 20 C.F.R. § 404.1527(c)(2)) (internal quotations omitted).

The Commissioner argues that Dr. Currier does not constitute a treating physician under the agency's regulations or Tenth Circuit precedent, and that Dr. Currier's opinion was not entitled to controlling weight. (Def.'s Resp. 9-10, ECF No. 18.) The ALJ noted that Dr. Currier treated Mr. Palmer only a few times, implicitly questioning whether he qualified as Mr. Palmer's treating physician, but not addressing that issue specifically. A physician who has only seen the patient *once* likely will not receive the deference a treating physician would.[4] Here, the record shows Mr. Palmer saw Dr. Currier a number of times, not just once: the Commissioner refers to examinations with Dr. Currier in February 2011, on April 20, 2011, and August 1, 2011 (Def.'s Resp. 3, ECF No. 18), and testimony suggests additional visits prior to the hearing in February 2012, documentation of which did not find its way into the record (tr. 56).

Whether he deemed Dr. Currier a treating physician or not, the ALJ never specified what weight he assigned to Dr. Currier's testimony. He assigned Dr. Singhal's opinions "some weight" (tr. 24), Dr. Heinbecker's opinions "considerable weight" (*id*.), and State Agency Consultants Drs. Brill and Cali "some weight" (tr. 25). As to Dr. Currier, the ALJ "question[ed] the doctor's concerns that it would take 12 months to stabilize [Mr. Palmer's] mental impairments as the medical record clearly showed a distinct stabilization of his moods with medications." (Tr. 24-25.) In this analysis, the ALJ plainly neglects to indicate what weight he attributed to Dr. Currier. In *Watkins v. Barnhart*, the Tenth Circuit remanded the case because "the ALJ offered no explanation for the weight, if any, he gave to the opinion of Dr. Rowland, the treating physician," and so the Court could not "properly review the ALJ's decision without

---

[4] "Absent an indication that an examining physician presented 'the *only* medical evidence submitted pertaining to the relevant time period,' the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion. *Reid v. Chater*, 71 F.3d 372, 374 (10th Cir.1995) (emphasis added)." *Doyal*, 331 F.3d at 763.

10

these necessary findings." *Watkins*, 350 F. 3d at 1300. The Court found remand appropriate because a court "cannot simply presume the ALJ applied the correct legal standards in considering [the treating physician's] opinion." *Id.* at 1301. Without the ALJ stating the weight he accorded Dr. Currier, this Court must remand the case because it cannot assess whether substantial evidence supports a finding the ALJ did not make.

Because Mr. Palmer primarily complains of disability resulting from his depression and associated anxiety, and because he saw psychiatrist Dr. Currier for this depression for over a year, the ALJ must conduct an analysis to determine whether Dr. Currier qualifies as Mr. Palmer's treating physician, and, whether he is or not, the ALJ must assign a weight to Dr. Currier's opinion and explain how he reached that determination. Therefore, the Court REMANDS this case for the ALJ to consider Dr. Currier's opinion properly.

## II. Evaluation of the Utah Medical Board Decision

Mr. Palmer argues, and the Commissioner concedes, the ALJ "erred when he referred to the State of Utah's Medicaid November 30, 2011, determination as an opinion of Dr. Singhal." (Def.'s Resp. 17, ECF No. 18; & *see* Pl.'s Opening Br. 12, ECF No. 11.) In its finding, the State of Utah determined that Mr. Palmer met Listing 12.04 as of May 2011. (Tr. 322-23.)

"Although findings by other agencies are not binding on the Secretary, they are entitled to weight and must be considered." *Baca v. Dept. of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993) (citation omitted). Utah provides Medicaid based on disability only to individuals who, at a minimum, meet the SSI program's disability standards because "Medicaid

incorporates the SSI definition of disability." *Perea v. Sullivan*, No. 87-NC-0076, 1989 WL 168764, at *1, *1 n.2 (D. Utah Nov. 29, 1989).[5]

The Commissioner argues that the ALJ's confused consideration of the Medicaid Determination constitutes harmless error. (Def.'s Resp. 17, ECF No. 18.) This view rests on the claim that, in his analysis of the document, the ALJ appropriately gave the Medicaid Determination less consideration than medical evidence even though the ALJ *did* believe it came from a treating physician (namely Dr. Singhal) at the time. (Def.'s Resp. 18, ECF No. 18.) The ALJ analyzed the Medicaid Decision as follows: Dr. Singhal opined Mr. Palmer's depression met Listing 12.04 but did not extrapolate or complete a questionnaire to support the opinion; the record evidence counters that finding because medications stabilized Mr. Palmer's mood disorders. (Tr. 24.)

Because the ALJ failed to recognize Exhibit 10F/2 as a government agency decision, the Court cannot find that the ALJ followed *Baca*'s standard requiring consideration of such a finding and "entitl[ing it] to weight." *Baca*, 5 F.3d at 480. Without understanding what the exhibit represented, the ALJ's analysis of the exhibit becomes suspect. Accordingly, the Court ORDERS the ALJ on remand to consider the Medicaid decision properly as another agency's decision.

---

[5] "The creation of SSI … engendered concern because 'Congress imposed the requirement that all recipients [of] SSI … were entitled to Medicaid.'" *Ramey v. Reinertson*, 268 F.3d 955, 958 (10th Cir. 2001) (citing *Schweiker v. Gray Panthers,* 453 U.S. 34, 38 (1981)). To assuage these concerns, Congress allowed states to elect to provide Medicaid assistance only to those individuals who would have been eligible under the state's Medicaid plan in effect prior to SSI taking effect—the 209(b) option. *Grey Panthers*, 453 U.S. at 38-39. "States thus became either 'SSI States' or '209(b) States' depending on the coverage that they offered." *Id*. at 39. Utah is an SSI State. *Program Operations Manual System*, SI 01715.010 Medicaid and the SSI Program (Effective Dates: 02/15/2008-Present) (last visited Mar. 27, 2013, 12:55 PM), http://policy.ssa.gov/poms.nsf/lnx/0501715010.

## CONCLUSION

For the foregoing reasons, the Court REMANDS the decision to the Commissioner for reconsideration.

SO ORDERED this 31st day of March, 2014.

BY THE COURT:

_____
Evelyn J. Furse
United States Magistrate Judge